IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JOSEPH TOWNSEND                                                                             PLAINTIFF

v.                              Case No. 4:16-cv-4036

AUTOZONE STORES, LLC; and
RANDY MAGNESS                                                    DEFENDANTS

**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment filed by Defendants AutoZone Stores, LLC, ("AutoZone Stores") and Randy Magness ("Magness"). ECF No. 73. Plaintiff Joseph Townsend ("Townsend") has filed a response. ECF Nos. 83 and 86. Defendants have filed a reply. ECF No. 89. In addition, Defendants have filed a motion for relief pursuant to 28 U.S.C. § 1927. ECF No. 73. Townsend has responded to that motion (ECF Nos. 83 and 86), and Defendants have filed a reply. ECF No. 89. The Court finds this matter ripe for its consideration.

For the reasons explained below, Defendants' motion for summary judgment will be granted.[1] Defendants' motion for attorneys' fees and costs under 28 U.S.C. § 1927 is denied.

**I. BACKGROUND**

Townsend is an African-American male who previously worked at AutoZone retail stores. Townsend began his tenure with AutoZone in 1995 and was ultimately promoted to a full-time position as a Parts Sales Manager. Townsend was transferred between multiple AutoZone stores

---

[1] Based upon the Court's findings herein, Defendants' Motion for Partial Summary Judgment (ECF No. 50), which seeks dismissal of Townsend's claims against AutoZone Stores, should be and hereby is **DENIED AS MOOT**.

throughout the course of his employment and was employed at the Texarkana, Texas, store in early 2011.

In April 2011, Townsend was transferred from the AutoZone store in Texarkana, Texas, to the store in Magnolia, Arkansas. The circumstances concerning the decision to transfer Townsend are a major point of dispute between the parties. The Regional Human Resources Manager, Ronnie Mongioi ("Mongioi"), made the recommendation to transfer Townsend, according to Defendants. Defendants assert that Mongioi's recommendation was partly based on the excessive number of Parts Sales Managers in Texarkana and the need for a Parts Sales Manager in Magnolia. Defendants further maintain that Mongioi believed that the transfer would be advantageous to Townsend because the Magnolia location was closer to Townsend's home than the store in Texarkana. Defendants contend that other considerations in the decision to transfer Townsend included Townsend's desire to advance within the company, as well as the belief that Townsend would benefit from the mentorship of Mareia Bell, who was the Store Manager of the Magnolia store at the time.

Another point of dispute between the parties is what part Magness played, if any, in the decision to transfer Townsend. At the time the decision was made to transfer Townsend, Magness was the District Manager in charge of the AutoZone stores in Texarkana and Magnolia. Defendants maintain that Mongioi contacted Magness to recommend that Townsend be transferred from the Texarkana store. Magness concurred with Mongioi's recommendation and subsequently informed Townsend of the decision to transfer him to the Magnolia store.

Townsend takes issue with the proffered reasoning behind the decision to transfer him. Specifically, Townsend maintains that the transfer was prompted, at least in part, by Magness's

2

view that Townsend "played the race card." According to Townsend, the transfer was effected so that Magness could orchestrate Townsend's eventual termination from the company.

The parties appear to agree that Townsend initially objected to being transferred. Sometime after learning of the decision, Townsend maintains that he approached Magness to voice his opposition, to which Magness replied, "Boy . . . I'm going to transfer you whether you like it or not." It is undisputed that Townsend later contacted Lonnie Nicholson ("Nicholson"), the Regional Manager, in May 2011, to inform him of his objection to the transfer. According to Townsend, Nicholson responded that the transfer violated company policy and that Nicholson promised to look into the matter. Townsend maintains that Nicholson never followed through with his promise to investigate the matter. While the parties dispute whether Townsend ultimately approved of the decision, he was eventually transferred to the Magnolia store.

Townsend's tenure at the Magnolia store did not last long. The circumstances surrounding Townsend's termination revolve around Townsend's return of a car wash set in June 2011. The parties do not appear to dispute that the item was previously returned and marked with a "manager's dispose" sticker, which meant that the item should have been discarded. According to Defendants, Townsend claimed that the car wash set was defective. Townsend returned the car wash set by using his wife's name and driver's license to process the return despite her nonattendance of the transaction. While the parties appear to dispute whether Bell or Magness reported the transaction, upper management was eventually notified and an investigation was conducted.

According to Defendants, the investigation revealed that the item had been returned in January 2011 and was marked with a "manager's dispose" sticker. Based on these findings, along with a statement given by Townsend concerning the incident, Defendants assert that Mongioi

3

recommended that Townsend be terminated on the basis that he falsified company documents. Defendants specifically take the position that Townsend violated company policy by returning an item that had been marked for disposal, signing his wife's name, and using her driver's license number to complete the return as if his wife was the customer returning the item. Defendants maintain that Nicholson accepted Mongioi's recommendation and decided to terminate Townsend's employment for falsification of company documents.

Thereafter, on October 2, 2015, Townsend initiated the instant lawsuit in the Circuit Court of Lafayette County, Arkansas. The action was removed to this Court on April 20, 2016. Townsend's Amended Complaint, filed in the Lafayette County Circuit Court, alleges race-based failure-to-promote and discharge claims against AutoZone Stores, AutoZoners, LLC ("AutoZoners"), and Magness pursuant to the Arkansas Civil Rights Act ("ACRA") and 42 U.S.C. § 1981. The Amended Complaint further alleges that AutoZone Stores, AutoZoners, and Magness retaliated against Townsend in violation of the ACRA and Section 1981. Townsend also asserts Arkansas Minimum Wage Act ("AMWA") claims against AutoZone Stores, AutoZoners, and Magness for denial of overtime wages.

On November 4, 2016, the Court issued an Order granting in part and denying in part a motion to dismiss filed by Defendants. ECF No. 33. Notably, the Court's Order dismissed all claims against AutoZoners. Pursuant to the Court's Order, the following claims remain in this action: the ACRA and Section 1981 race discrimination claims against AutoZone Stores; the ACRA and Section 1981 retaliation claims against AutoZone Stores and Magness; and the AMWA claims against AutoZone Stores and Magness.

On July 28, 2017, Defendants filed the instant motion for summary judgment. Defendants specifically argue that they are entitled to summary judgment as to all claims against AutoZone

Stores on the basis that Townsend has no evidence demonstrating that AutoZone Stores was his employer. Defendants' motion also seeks dismissal of all claims asserted against Magness. In addition, Defendants move the Court for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.

## II. DISCUSSION

### A. Summary Judgment Standard

When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for trial — whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); s*ee also Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment

may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

**B. Substantive Law**

As previously stated, the following claims remain in this litigation: the ACRA and section 1981 claims of racial discrimination against AutoZone Stores based on an alleged failure-to-promote Townsend and the decision to terminate Townsend; the ACRA and section 1981 retaliation claims against AutoZone Stores and Magness based on Townsend's transfer to the Magnolia store and Townsend's termination; and an Arkansas Minimum Wage Act claim against AutoZone Stores and Magness for allegedly denying Townsend overtime wages. In his response to Defendants' motion, Townsend concedes that Defendants are entitled to summary judgment as to the claims against AutoZone Stores. ECF No. 83, p. 1. Accordingly, summary judgment will be entered in favor of Defendants as to those claims. Townsend does oppose, however, summary judgment with regard to his claims against Magness for retaliatory discharge, retaliatory transfer, and for violations of the AMWA.[2] Based on the foregoing, the Court will consider each of the remaining claims against Magness in turn.

**1. Retaliatory Transfer**

First, Defendants argue that Townsend's claim of retaliation against Magness with regard to his transfer to the Magnolia store should be dismissed as a matter of law. Retaliation claims brought pursuant to the ACRA and section 1981 are subject to the same analysis as Title VII retaliation claims. *Burkhart v. American Railcar Indus., Inc.*, 603 F.3d 472, 476-77 (8th Cir. 2010)

---

[2] In his brief, Townsend states that he concedes the "promotion claims against Magness." ECF No. 83, p. 1. Townsend initially asserted claims against AutoZone Stores, AutoZoners, LLC, and Magness for failing to promote him because of his race in violation of the ACRA and § 1981. *See* ECF No. 11, p. 3. Pursuant to the Court's Order entered on November 4, 2016, the Court dismissed Townsend's ACRA raced-based employment discrimination claims against Magness at Townsend's request. *See* ECF No. 33. Thus, the Court presumes that Townsend is referring to his claim against Magness for failure-to-promote under § 1981. Accordingly, the Court will enter summary judgment as to this claim.

("We analyze [the plaintiff's] Title VII and ACRA retaliation claims in the same manner."); *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1030 (8th Cir. 2013) (holding that courts apply the same analysis for § 1981 and Title VII retaliation claims). "To defeat summary judgment, a plaintiff must produce either direct evidence of discrimination or create an inference of it under the *McDonnell-Douglas* burden-shifting framework." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (citation omitted). The Court will first address whether Townsend has provided direct evidence to support this claim.

"Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct." *Id.* (citation omitted). Direct refers to the causal strength of the proof, not whether it is circumstantial evidence. *Id.* (citation and quotations omitted). Direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude, comments that demonstrate a discriminatory animus in the decision process, or comments uttered by individuals closely involved in employment decisions. *Harrell v. Robinson*, No. 12-CV-6108, 2014 WL 1953303, at *3 (W.D. Ark. May 15, 2014) (citing *Bevill v. Home Depot U.S.A., Inc.*, 753 F. Supp. 2d 816, 824 (S.D. Iowa 2009)).

Townsend points to several pieces of evidence to satisfy his burden of producing direct evidence of retaliation regarding his transfer. Townsend first argues that he objected to the transfer, to which Magness replied, "Boy . . . I'm going to transfer you whether you like it or not." Townsend also notes that he previously filed an EEOC charge. In addition, Townsend directs the Court's attention to an affidavit provided by Mareia Bell, the former Store Manager at the Magnolia store. According to Bell's affidavit, Magness transferred Townsend to the Magnolia

7

store because Townsend "had caused them some problems." The affidavit further provides that Magness told Bell that she "knew how to handle people," and that she "knew what to do" if Townsend "caused trouble." Bell was instructed to "document everything" about Townsend, according to the affidavit. In addition, Bell claims that Magness described Townsend as someone who played the "race card." Bell's affidavit states that the "race card" comment was made some time after Townsend was transferred, but before his termination.

Defendants argue that Bell's affidavit demonstrates that Magness's alleged comments were not made in reference to Townsend's transfer to the Magnolia store. In addition, Defendants note that the alleged comments were not made at the time Townsend was transferred. Defendants, thus, argue that Magness's alleged comments cannot constitute direct evidence of retaliation with regard to Townsend's transfer.

The Court agrees that Townsend has failed to present direct evidence of retaliation with regard to his transfer. First, none of the alleged comments demonstrate a "specific link" between Townsend's transfer to the Magnolia store and any protected conduct. While Townsend contends that he filed an EEOC charge in previous years, no evidence in the record supports this claim.[3] Further, the evidence fails to establish that Magness's alleged "race card" comment was made during the decisional process to transfer Townsend. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006) (holding that isolated, stray comments unrelated to the decisional process do not constitute direct evidence of discrimination, even if made by decision makers); *see also Bloom v. Grp. Health Plan, Inc.*, No. CIV. 12-3060, 2014 WL 3955668, at *5 (D. Minn. Aug. 13,

---

[3] Townsend cites to page 209 of his deposition in support of this claim. However, this portion of Townsend's deposition has not been entered into the record. In addition, Townsend's deposition demonstrates that he could not recall whether he had previously filed an EEOC charge. *See* ECF No. 73-3, p. 173.

2014) ("The law is clear that stray comments, petty slights or a standoff attitude are not actionable retaliation.").

Because Townsend has failed to produce direct evidence of a retaliatory motive regarding his transfer, the Court must analyze this claim under the *McDonnell-Douglas* burden shifting analysis. Under the *McDonnell-Douglas* analysis, a plaintiff must establish a *prima facie* case of retaliation consisting of evidence that: (1) he engaged in a protected activity; (2) the defendant took an adverse employment action against him; and (3) the two situations are causally connected. *Okruhlik v. Unvi. of Ark.*, 395 F.3d 872, 878 (8th Cir. 2005). "If the *prima facie* case is met, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the action it took against the plaintiff." *Id*. If the defendant does so, the burden then shifts back to the plaintiff to put forth evidence of pretext, "the ultimate question being whether a prohibited reason, rather than the proffered reason, actually motivated the [defendant's] action." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011) (citation and quotations omitted).

Defendants offer several arguments in support of their position that Townsend cannot establish a *prima facie* case of retaliation against Magness. First, Defendants maintain that Townsend cannot prove that his transfer to the Magnolia store constituted an adverse employment action. Specifically, Defendants contend that Townsend's transfer to the Magnolia store did not result in any change in benefits, position, or opportunity for advancement. In support of this position, Defendants note that it is undisputed that Townsend stated his willingness to transfer within the company on his employment application, had been transferred on numerous occasions, and could not recall whether he asked to be transferred on each occasion. It is further undisputed that the transfer to the Magnolia store did not result in a change or deprivation of position, benefits,

pay, or promotional opportunities. In addition, Townsend admits that the Magnolia store was closer to his home.

"An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir.1999)). The Eighth Circuit has held that termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects all constitute adverse employment actions. *Id*. "However, minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted).

In this case, the Court agrees that Townsend has failed to establish that his transfer to the Magnolia store constituted an adverse employment action. Townsend's briefs do not contain an argument addressing this element. In addition, Townsend has conceded that his transfer to the Magnolia store did not result in a change in benefits, position or opportunities for advancement. Moreover, Townsend admits that the Magnolia store was actually closer to his home than the Texarkana store.

Although Townsend may have objected to the transfer, the Court concludes that this does not amount to an adverse employment action. While the Court recognizes that "[t]o be adverse, the action need not always involve termination or even a decrease in benefits or pay[,] . . . not everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (citation and quotations omitted). Accordingly, the Court

finds that Townsend has failed to make a *prima facie* case of retaliation because he has not shown that he suffered an adverse employment action.

Even if Townsend could show an adverse employment action, he cannot establish that he was engaged in any protected activity prior to his transfer to the Magnolia store. There is no evidence that either Magness or Mongioi knew of any protected activities that Townsend allegedly engaged in before making the decision to transfer him. As previously mentioned, Bell's affidavit indicates that Magness's alleged "race card" comments occurred sometime after the decision was made to transfer Townsend. Moreover, Townsend has provided no evidence to demonstrate that he filed an EEOC charge or otherwise complained of racial discrimination prior to being transferred to the Magnolia store. Accordingly, the Court finds that Townsend has failed to make a prima facie case of retaliation because there is no evidence that he engaged in protected activity prior to his transfer.

Even if the Court assumes, *arguendo*, that Townsend has made a *prima facie* case of retaliation with regard to his transfer, his claim still fails. Defendants have offered a legitimate, non-discriminatory reason for Townsend's transfer to the Magnolia store. Specifically, Defendants maintain that the decision to transfer Townsend was based on the need for a Parts Sales Manager at the Magnolia store. Defendants also maintain that Townsend's transfer to the Magnolia store made sense given its close proximity to Townsend's home and the belief that Townsend's placement in the store would lead to more advancement opportunities.

Townsend contends that Defendants' reasoning for the transfer is mere pretext for retaliation and that the true motivation behind his transfer was to "set up" his eventual termination. However, there is no evidence in the record to support Townsend's contention. Townsend appears to point to Bell's affidavit as evidence of pretext, which states that Townsend disagreed with the

11

transfer and that "company policy and practice required an employee to agree and accept the transfer."

The Court finds that any potential policy violation with regard to Townsend's transfer is not indicative of pretext. "[A]lthough an employer's violation of its own policies may be indicative of pretext, that is not always so." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 522 (8th Cir. 2010) (citation and quotation omitted). "An employer can certainly choose how to run its business, including not to follow its own personnel policies . . . as long as it does not unlawfully discriminate in doing so." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009). As the Eighth Circuit has explained, "[e]ven if the employer's acts are unfair, there has to be evidence connecting the unfairness to a discriminatory animus." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015). In short, Townsend has not offered any evidence to support his assertion that the decision to transfer him was more likely motivated by an intent to retaliate against him than the legitimate, non-discriminatory reason for the transfer proffered by Defendants. Because Townsend cannot establish a *prima facie* case of retaliation or that Defendants' reason for the transfer was pretextual, Defendants are entitled to summary judgment with regard to Townsend's retaliatory transfer claim against Magness.

### 2. Retaliatory Discharge

#### a. Cat's Paw Theory

Next, Defendants contend that summary judgment should be granted with regard to Townsend's retaliatory discharge claim. Specifically, Defendants argue that Nicholson acted alone in deciding to terminate Townsend. In support of this assertion, Defendants cite to Nicholson's deposition wherein he testified that he made the decision to terminate Townsend based upon Mongioi's recommendation. Mongioi stated in his declaration that his recommendation was

based upon an investigation conducted by the company's Loss Prevention Department. Defendants assert that Townsend has failed to offer any evidence to dispute this testimony. In addition, Defendants contend that Townsend has failed to present any evidence demonstrating that Nicholson knew Townsend engaged in alleged protected activity prior to making his termination decision.

Townsend does not appear to dispute that Nicholson made the decision to terminate his employment. However, Townsend relies upon the cat's paw rule to seemingly argue that Nicholson's decision to terminate Townsend was influenced by Magness's retaliatory bias. According to Townsend, Magness "aided and abetted the retaliation" against Townsend "[b]y engaging in . . . discriminatory and retaliatory conduct." ECF No. 83, p. 2. Townsend draws the Court's attention to Nicholson's testimony wherein he testified that Magness had the authority to hire and terminate employees. In addition, Townsend asserts that Magness "orchestrated the transfer to set up a termination of a black man by a black woman, . . . instructed Ms. Bell to engage in . . . stricter scrutiny [of Townsend,]. . . and participated in the termination by reporting conduct that Ms. Bell could not even determine occurred." *Id*. In support of this position, Townsend cites to Bell's affidavit wherein she opines that Magness transferred Townsend to her store so that she could terminate him. Townsend also points to Bell's statement that she disagreed with the decision to terminate Townsend because she could not determine whether the item qualified as a return or not.

"In the employment discrimination context, cat's paw refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009) (citation and quotations omitted); *see also*

13

*Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir.1998) ("In a cat's paw situation, the harasser clearly causes the tangible employment action, regardless of which individual actually signs the employee's walking papers."). "Pursuant to this theory . . . an employer can be liable, under certain circumstances, where the formal decisionmaker is not the person who harbored an unlawful motive to terminate the employee." *Id*. (citation and quotations omitted). The Eighth Circuit has provided that the purpose of the cat's paw rule is to ensure that "an employer cannot shield itself from liability for unlawful termination by using a purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design." *Dedmon v. Staley*, 315 F.3d 948, 949 n. 2 (8th Cir. 2003). "Where a decisionmaker makes an independent determination as to whether an employee should be terminated and does not serve as a mere conduit for another's discriminatory motives, the cat's paw theory fails." *Richardson v. Sugg*, 448 F.3d 1046, 1060 (8th Cir. 2006) (citing *Lacks v. Ferguson Reorganized Sch. Dist. R–2*, 147 F.3d 718, 725 (8th Cir.1998)).

In the present case, the Court concludes that Townsend's cat's paw argument fails. Specifically, Townsend has failed to offer evidence to support his theory that Nicholson's termination decision was a "rubber stamp" of Magness's unlawful desire to retaliate against Townsend. No evidence has been offered to rebut the testimony offered by Defendants showing that Nicholson acted independently in deciding to terminate Townsend. In addition, Townsend has presented no evidence concerning how much influence Magness exerted over Nicholson's decision to terminate Townsend, if any. While Townsend argues that "the entire investigation" was prompted by Magness' instruction to subject Townsend's actions to "stricter scrutiny," no

evidence has been submitted to demonstrate that Magness influenced or interfered with Nicholson's investigation into whether Townsend falsified documents.

Moreover, as previously stated, Townsend has offered no evidence to demonstrate that he engaged in any protected activity prior to his termination that would cause Magness to harbor any retaliatory animus toward him. As Defendants note, while Bell's affidavit states that Magness allegedly remarked that Townsend "played the race card," the context of this comment is unclear. It is also unclear if the comment was made at or near the time that Magness reported Townsend's alleged company violations to upper management. Accordingly, the Court finds that Townsend has failed to show that Magness should be held liable under cat's paw theory.

### b. *McDonnell-Douglas* Analysis

The Court will next consider whether Townsend has established a *prima facie* case for retaliatory discharge under the *McDonnell-Douglas* framework. As previously noted, in order to establish a *prima facie* case of retaliation, Townsend must show that: (1) he engaged in a protected activity; (2) the defendant took an adverse employment action against him; and (3) the two situations are causally connected. *Okruhlik*, 395 F.3d at 878. Defendants assert that Townsend has failed to establish a *prima facie* case of retaliation because Nicholson made the decision to terminate Townsend and had no knowledge of any protected activity that Townsend may have engaged in.

After a review of Townsend's briefs, he does not appear to argue that he has made a *prima facie* case of retaliation with regard to his retaliatory discharge claim. Regardless, the Court finds that Townsend has not established a *prima facie* case in this instance because, as stated previously, he has failed to offer evidence of any protected activity that he engaged in prior to his termination. Moreover, he has also failed to offer evidence that Nicholson or Magness knew of such activity.

Accordingly, the Court finds that Defendants are entitled to summary judgment with regard to Townsend's retaliatory discharge claim against Magness.

### 3. Arkansas Minimum Wage Act

Next, Defendants request that the Court grant summary judgment as to Townsend's AMWA claim. Because the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over this claim.[4] In the Eighth Circuit, the preference is for a court to decline to exercise supplemental jurisdiction when all federal claims have been eliminated before trial. *Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004).

### C. Defendants' Motion for Sanctions

Pursuant to 28 U.S.C. § 1927 and the Court's inherent powers, Defendants move the Court for an award of attorneys' fees. It is well established that district courts have the inherent power to "assess attorneys' fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266 (8th Cir. 1993). In addition, section 1927 authorizes the Court to order an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" to pay the opposing party's excess costs, expenses, and attorneys' fees. Sanctions are warranted under section 1927 "when an attorney's conduct viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003) (citation and quotation omitted). "Because section 1927 is penal in nature, it should be strictly construed so that it does not dampen the legitimate zeal of an attorney in representing his client." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999) (citation and quotations omitted). "The imposition of sanctions [under section

---

[4] A district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

1927] is a serious matter and should be approached with circumspection." *Id.* (quoting *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987)). "An award of fees under § 1927 is given solely to the discretion of the district court." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988).

In the present case, Defendants contend that sanctions are appropriate because Townsend admitted that Magness had no knowledge of any off the clock work performed by Townsend. Accordingly, Defendants take the position that there was no basis for Townsend's AMWA claim and seek fees and costs incurred as a result of defending the claim. In addition, Defendants assert that Townsend had no basis for filing claims against AutoZone stores because he had no evidence that AutoZone Stores had any control over any term or condition of his employment. Alternatively, Defendants assert that Townsend should have known that his claim was unreasonable based upon evidence that he obtained in the discovery process.

The Court finds Defendants' arguments unavailing. While the Court has declined to exercise jurisdiction over Townsend's AMWA claim, Townsend does argue that Magness had knowledge of his alleged overtime work and has introduced some evidence in support of this claim. Regarding whether Townsend should be sanctioned for filing claims against AutoZone, the Court notes that attorneys cannot be sanctioned under section 1927 for filing frivolous actions. *See Welk v. GMAC Mortg.*, LLC, 850 F. Supp. 2d 976, 1005 (D. Minn. 2012). As the First Circuit has explained, though "[s]hoddy work related to the commencement of an action may be sanctionable under other approaches . . . a lawyer cannot violate section 1927 in the course of commencing an action." *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 65 (1st Cir. 2008). It also appears that Townsend attempted to remedy the situation by conceding his claims against AutoZone Stores at the summary judgment stage. The Court, thus, finds that section 1927 sanctions are unwarranted.

For similar reasons, the Court declines to exercise its inherent authority to impose sanctions in this matter. Accordingly, Defendants' request for attorneys' fees and costs is denied.

### III. CONCLUSION

Based on the foregoing, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 73) should be and hereby is **GRANTED**. All claims against AutoZone Stores are hereby **DISMISSED WITH PREJUDICE**. Townsend's ACRA and section 1981 claims for failure-to-promote, retaliatory discharge, and retaliatory termination against Magness are **DISMISSED WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Townsend's remaining AMWA claim against Magness.[5] Defendants' motion for relief pursuant to section 1927 and the Court's inherent powers is **DENIED**.

**IT IS SO ORDERED**, this 12th day of October, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

---

[5] In light of the Court's ruling, the Court finds that Defendants' Motion to Continue Trial Date and for Extension of Unexpired Pretrial Deadlines and for Expedited Consideration (ECF No. 90) should be and hereby is **DENIED AS MOOT**.